[No. A046094. First Dist., Div. Two. Aug. 8, 1991.]

MARILYN KAHN, Plaintiff and Appellant, v.
ROSEMARY BOWER et al., Defendants and Appellants.

## Counsel

Kadushin, Fancher & Wickland and Paige Wickland for Plaintiff and Appellant.

Branson, Fitzgerald & Howard, Joseph C. Howard, Jr., and Deirdre A. O'Reilly for Defendants and Appellants.

## Opinion

**KLINE, P. J.**—The chief questions presented by this appeal are whether plaintiff, a publicly employed social worker, stated facts sufficient to constitute a cause of action in her complaint based upon an allegedly defamatory letter written by defendant to plaintiff's supervisor and whether plaintiff is a "public official" within the meaning of *New York Times Co. v. Sullivan*

(1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]. Plaintiff appeals from a judgment on the pleadings and defendants cross-appeal from the trial court's denial of attorneys fees. We will affirm the judgment in its entirety.

## I.

On November 15, 1983, plaintiff, Marilyn Kahn, filed a complaint in propria persona purporting to state a single cause of action for libel against defendant Rosemary Bower and the West Coast Children's Center (WCCC), a private facility providing psychological testing and counseling for children, of which Ms. Bower was director. In April 1986, plaintiff filed her first amended complaint. The first cause of action was for libel, and alleged as follows: Plaintiff was employed as a child welfare worker I with the Alameda County Social Services Agency. Defendant Bower and WCCC provide counseling and testing services for children. On November 16, 1982, Bower sent a letter to plaintiff's supervisor which stated, among other things, "there are children, very needy children, whose lives we feel are seriously being interfered with by the incompetence of the worker, Mrs. Marilyn Kahn who is the social worker we deal with in the Social Services Department." The letter also contained the following sentence: "This goes so far beyond incompetence that I almost wonder about some kind of hostility towards the child or toward handicapped children in general." As a result of the letter, plaintiff was terminated.

The second cause of action, for malicious prosecution, asserted that defendants conspired to cause the initiation of a proceeding within the Alameda County Social Services Agency for the purpose of securing plaintiff's dismissal; it was alleged that the accusations against plaintiff were ultimately determined to be unfounded in a posttermination civil service proceeding, with the result that she was reinstated. The third, fourth, fifth, and sixth causes of action charged, respectively, that the sending of the letter constituted intentional infliction of emotional distress, negligent infliction of emotional distress, simple negligence, and an intentional inducement to plaintiff's employer to breach plaintiff's employment contract. The third cause of action contained the further allegation that defendants' acts caused plaintiff to take an early retirement as of March 1985, 10 years before she was scheduled to retire.

The letter, a copy of which was attached to the complaint, purported to describe several instances in which defendants had dealings with plaintiff. In the first instance, according to the letter, plaintiff met with Bower and a staff member of WCCC for three "very confusing" hours "trying to get straight exactly what she [plaintiff] wanted." Next plaintiff referred two children for

testing; the children proved to be more severely "delayed" than plaintiff had indicated, and the attempt to prepare an evaluation was marked by "a tremendous amount of confusion and disruption," including confusing demands from plaintiff, failures by her to provide needed materials, particularly school records, and apparent misstatements by her to the children's foster mother about the nature of the evaluation, resulting in the foster mother's becoming angry, and apparently uncooperative, with WCCC. Next the letter recounted an episode in which a teenage girl from Alaska appeared to have been abruptly and inexplicably returned to that state by plaintiff rather than being permitted to move to Germany with her foster family, as WCCC had recommended following an evaluation. Finally the letter described a case in which defendant Bower had asked whether the child in question was a client of the regional center and plaintiff "didn't seem to understand what the Regional Centers did, nor had she thought about contacting the Regional Centers."[1] The letter added Bower's "impression that [plaintiff] doesn't work at all or at least doesn't work well with the schools." Contrary to plaintiff's assertions to us, none of these statements were alleged in the complaint to be false or defamatory.

When the matter was called for trial, plaintiff expressly abandoned her claims for malicious prosecution and interference with contract, leaving only the claims for libel, infliction of emotional distress, and negligence. Without objection from either party, the trial court deemed defendants' trial brief to be a motion for judgment on the pleadings, which it granted on the ground that the statements complained of were nonactionable statements of opinion.

In their cost bill defendants claimed $34,404 in attorneys fees. The court entered judgment, disallowing attorneys fees. Plaintiff appealed. Defendants filed a notice of cross-appeal purporting to bring up for review two trial setting orders, the denial of a motion to dismiss for lack of prosecution, and the order taxing costs. We granted plaintiff's motion to dismiss the cross-appeal, except as to the portion challenging the denial of attorneys fees.

## II.

The trial court granted judgment on the pleadings, which is of course the equivalent of sustaining a general demurrer. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285].) The central question, therefore, is whether the complaint states facts sufficient to constitute a cause of action. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 262, p.

---

[1]Regional centers are an important element of service delivery to the developmentally disabled under the Lanterman Developmental Disabilities Services Act, Welfare and Institutions Code sections 4500 et seq. (See *id.*, § 4620.)

563.) We must accept the allegations of the complaint as true, but we may consider matters subject to judicial notice, including facts admitted by plaintiff on the record. (*Able* v. *Van Der Zee* (1967) 256 Cal.App.2d 728, 734 [64 Cal.Rptr. 481].) The question is whether those facts give rise to a cause of action in favor of the plaintiff.

## III.

The stated basis for the trial court's entry of judgment was its conclusion that the challenged statements "are statements of opinion and not statements of fact and therefore do not constitute actionable libel."

At the time of the trial court's ruling it was accepted doctrine that the First Amendment to the United States Constitution precludes the imposition of defamation liability for "statements of opinion." (See *Baker* v. *Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 269 [228 Cal.Rptr. 206, 721 P.2d 87], cert. den. 479 U.S. 1032 [93 L.Ed.2d 834, 107 S.Ct. 880]; *Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 454, 459 [175 Cal.Rptr. 157, 629 P.2d 1369]; *Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 681 [150 Cal.Rptr. 258, 586 P.2d 572], cert. den. 441 U.S. 961 [60 L.Ed.2d 1066, 99 S.Ct. 2406]; *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425]; *Hofmann Co.* v. *E. I. Du Pont de Nemours & Co.* (1988) 202 Cal.App.3d 390, 397 [248 Cal.Rptr. 384] [trade libel]; *Ault* v. *Hustler Magazine, Inc.* (9th Cir. 1988) 860 F.2d 877, 880, cert. den. 489 U.S. 1080 [103 L.Ed.2d 837, 109 S.Ct. 1532]; *Lewis* v. *Time Inc.* (9th Cir. 1983) 710 F.2d 549, 553; Rest.2d Torts N.O.S., § 566.)

This categorical exemption of opinions from the reach of defamation law rested on a passage from *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997]: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." (Fn. omitted.) In one of the seminal cases on this subject, the foregoing passage was quoted by the California Supreme Court, which went on to state that courts "apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse." (*Gregory* v. *McDonnell Douglas Corp., supra*, 17 Cal.3d 596, 601.)

The viability of this categorical "opinion rule" was considered in *Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. __ [111 L.Ed.2d 1, 18-19, 110 S.Ct. 2695, 2706]. The court said that the above quoted passage from *Gertz* was

not intended to create a "wholesale exemption for anything that might be labeled 'opinion.'" It described the categorical rule adopted by lower courts as a product of "mistaken reliance on the *Gertz* dictum." (*Id.*, at p. ___ [111 L.Ed.2d at p. 18, 110 S.Ct. at p. 2706].)[2]

At the same time, the *Milkovich* court reaffirmed earlier decisions holding that the First Amendment does not permit the imposition of liability for statements not conveying a false factual imputation. (See 497 U.S. at pp. ___-___ [111 L.Ed.2d at pp. 15-19, 110 S.Ct. at pp. 2704-2706], citing *Greenbelt Pub. Assn.* v. *Bresler* (1970) 398 U.S. 6, 13-14 [26 L.Ed.2d 6, 14-15, 90 S.Ct. 1537]; *Old Dominion Branch No. 496, etc.* v. *Austin* (1974) 418 U.S. 264, 284-286 [41 L.Ed.2d 745, 761-763, 94 S.Ct. 2770]; *Hustler Magazine* v. *Falwell* (1988) 485 U.S. 46 [99 L.Ed.2d 41, 108 S.Ct. 876]; *Philadelphia Newspapers, Inc.* v. *Hepps* (1986) 475 U.S. 767 [89 L.Ed.2d 783, 106 S.Ct. 1558].)

 In *Moyer* v. *Amador Valley J. Union High School Dist.* (1990) 225 Cal.App.3d 720, 724 [275 Cal.Rptr. 494], our colleagues in Division One noted that the dispositive question after *Milkovich* is "whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion."[3] The court also pointed out that *Milkovich* left intact the rule that in libel cases reviewing courts must independently examine the entire record to determine whether the action impermissibly

---

[2]Respondents suggest that a categorical exemption for opinion exists independently under California law. We find no support for this proposition in the cited defamation cases. (See *Yorty* v. *Chandler* (1970) 13 Cal.App.3d 467, 472 [91 Cal.Rptr. 709] [political cartoon not actionable in light of traditional protection afforded statements critical of public officers or candidates]; *Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 872 [193 Cal.Rptr. 414].) Nor is it likely that such a rule will be adopted under article I, section 2 of the California Constitution. (See *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 745-746 [257 Cal.Rptr. 708, 771 P.2d 406] [court reluctant to recognize unlegislated libel defense where protection thus afforded would exceed that under First Amendment]; but see *Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033, 1041, 1049, fn. 4 [232 Cal.Rptr. 542, 728 P.2d 1177]; *Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 519 [217 Cal.Rptr. 225, 703 P.2d 1119]; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 910 [153 Cal.Rptr. 854, 592 P.2d 341], affd. (1980) 447 U.S. 74 [64 L.Ed.2d 741, 100 S.Ct. 2035]; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116]; *Dailey* v. *Superior Court* (1896) 112 Cal. 94, 97-98 [44 P. 458].)

[3]We believe the standards adopted in *Milkovich* are applicable regardless whether the defendant is a member of the media. (See *Moyer, supra,* 225 Cal.App.3d at pp. 724-725, fn. 2; *Hepps, supra,* 475 U.S. at p. 780 [89 L.Ed.2d at p. 795] [conc. opn. of Brennan, J.]; *Miller* v. *Nestande* (1987) 192 Cal.App.3d 191, 198, 200 [237 Cal.Rptr. 359, 62 A.L.R.4th 301]; *Hofmann* v. *E. I. Du Pont de Nemours & Co., supra,* 202 Cal.App.3d 390, 403.) This conclusion is consistent with the general principle that members of the media have "no special privilege to invade the rights and liberties of others." (*Associated Press* v. *Labor Board* (1937) 301 U.S. 103, 132-133 [81 L.Ed. 953, 960-961, 57 S.Ct. 650]; *Branzburg* v. *Hayes* (1972) 408 U.S. 665, 683 [33 L.Ed.2d 626, 640-641, 92 S.Ct. 2646]; *Brown* v. *Kelly Broadcasting Co., supra,* 48 Cal.3d 711, 755.)

infringes or threatens to infringe free expression. (*Ibid.*) **(2b)** Furthermore, in ascertaining whether the statement in question is sufficiently communicative of provable falsity or actual fact to subject the defendant to liability, courts will continue to consider the " 'totality of the circumstances . . . . First, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense . . . . [¶] Next, the context in which the statement was made must be considered . . . . [¶] This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed.' " (*Ibid.*, quoting *Baker v. Los Angeles Herald Examiner, supra*, 42 Cal.3d at pp. 260-261; see *Hofmann Co. v. E. I. Du Pont de Nemours & Co., supra*, 202 Cal.App.3d at p. 398.)

The question whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court. (*Moyer, supra*, 225 Cal.App.3d at p. 724; *Baker, supra*, 42 Cal.3d 254, 260; *Okun v. Superior Court, supra*, 29 Cal.3d 442, 450.) However, as noted in *Good Government Group of Seal Beach, supra*, 22 Cal.3d 672, 682, some statements are ambiguous and cannot be characterized as factual or nonfactual as a matter of law. "In these circumstances, it is for the jury to determine whether an ordinary reader would have understood the article as a factual assertion . . . ." (*Ibid.*; see *Hofmann Co. v. E. I. Du Pont de Nemours & Co., supra*, 202 Cal.App.3d at pp. 397-398.)

■ The allocation of functions between court and jury with respect to factual content is analogous to the allocation with respect to defamatory meaning in general. On the latter issue, the court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader. (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 546 [343 P.2d 36]; *Williams v. Daily Review, Inc.* (1965) 236 Cal.App.2d 405, 411 [46 Cal.Rptr. 135]; see *Maidman v. Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 651 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439].) Similarly, it is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact. If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed.

Here, plaintiff apparently complains about the following four sentences: (1) "[T]here are children, very needy children, whose lives we feel are seriously being interfered with by the incompetence of the worker, Mrs.

Marilyn Kahn[,] who is the social worker we deal with in the Social Services Department." (2) "In discussing this report with the rest of the staff at West Coast Children's Center, we have tried to figure out what is the matter with Marilyn Kahn. Is it incompetence or exactly what is it?" (3) "The business of sending the child back to Alaska, taking her away from the foster parents she loved, in absolute contradiction to our report, which she [plaintiff] had ordered . . . goes so far beyond incompetence that I almost wonder about some kind of hostility towards the child or toward handicapped children in general." (4) "I feel that her level of incompetence and the confusion, the chaos, the time wasting, simply makes it impossible for us to work with her." Plaintiff contends that these statements convey the meaning that she is incompetent and that she is hostile to children.

We do not believe the statements can be reasonably understood to assert as an actual fact that plaintiff is hostile to children. This interpretation necessarily rests on the third sentence, but Bower only states there that she is mystified by plaintiff's conduct in the episode in question and "almost wonder[s]" whether it reflects hostility. This sentence, which is "cautiously phrased in terms of apparency" (*Gregory* v. *McDonnell Douglas Corp., supra,* 17 Cal.3d at p. 603), is nothing more than speculation or rumination —something less even than surmise or conjecture.

The same cannot be said of the imputation of incompetence. Because of Ms. Bower's professional status and that of the person to whom she wrote, plaintiff's supervisor, the letter is susceptible of the interpretation that plaintiff's incompetence is asserted as an "actual" condition, a matter of fact. The real question is whether this premise—that plaintiff was "incompetent" —is susceptible of an interpretation which makes it *"provably* false." The assertion may, on its face, approach the outer limits of vagueness and subjectivity. However, we believe it is reasonably susceptible of a provably false meaning. For example, in the context of the letter as a whole it might be reasonably understood to convey the meaning that in the situations in which defendants observed plaintiff, she showed so little ability to perform the duties of her position that her occupancy of it was deleterious to the children in her care, made it impossible for WCCC to economically provide services to those children, or both. A jury could decide whether that premise is true or false.[4] Therefore the statements conveying an imputation of incompetence appear actionable as against the objection that they lack the requisite factual content.

[4]We have considered and rejected the idea that the question of "competence" could be resolved by applying the "standard of care" formula used in professional negligence suits. Bower did not accuse plaintiff of negligence, much less of breaching the standard of care. She might agree with such an accusation, and it might be similar in substance to what she *did* say. The fact remains that she did not convey the legal concept of failure to comply with a professional standard of care, but the more nebulous and common concept of incompetence.

## IV.

Defendants have consistently asserted that plaintiff is a public official required to plead and prove that defendants published a knowing or reckless falsehood. The trial court did not reach this issue, but that does not preclude our considering it on appeal.

It is a fundamental principle of appellate review that "if the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266, italics in original.) Plaintiff overlooks this rule, responding to some of defendants' arguments solely by asserting that any claimed defense other than the categorical opinion rule is "irrelevant" because it was not relied upon by the trial court. This is simply incorrect. We therefore proceed to a consideration of the question whether the complaint is deficient for failure to plead the facts necessary to establish liability where the plaintiff is a public official.

Under *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254, a statement concerning a "public official" can support a judgment for libel only if the statement was made with knowledge that it was false, or with reckless disregard for the truth. For purposes of this rule, "reckless disregard" means a high degree of awareness of probable falsity, i.e., serious doubts about the statement's truth. (*St. Amant* v. *Thompson* (1968) 390 U.S. 727, 731 [20 L.Ed.2d 262, 267, 88 S.Ct. 1323].)

The question is whether plaintiff qualifies as a "public official" for purposes of this federal constitutional rule. This issue is determined under federal, not state, law. (*Rosenblatt* v. *Baer* (1966) 383 U.S. 75, 84 [15 L.Ed.2d 597, 604-605, 86 S.Ct. 669].) It is an issue for the court and not a jury. (*Id.,* at p. 88 [15 L.Ed.2d at pp. 606-607].)

In *Rosenblatt* v. *Baer, supra,* the court considered whether the former operator of a publicly owned resort area was a "public official." The court noted that the constitutional privilege announced in *New York Times Co.* v. *Sullivan* rested on two vital constitutional interests: "There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial

responsibility for or control over the conduct of governmental affairs." (383 U.S. at p. 85 [15 L.Ed.2d at p. 605], fn. omitted.) "Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply." (*Id.*, at p. 86 [15 L.Ed.2d at p. 606], fns. omitted.) "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." (*Id.*, at p. 86, fn. 13 [15 L.Ed.2d at p. 606].)

■ Thus the touchstone for public official status is the extent to which the plaintiff's position is likely to attract or warrant scrutiny by members of the public. Such scrutiny may follow either because of the prominence of the position in the official hierarchy, or because the duties of the position tend naturally to have a relatively large or dramatic impact on members of the public. Illustrative of the latter situation are the many cases holding that lower echelon law enforcement officers are public officials for purposes of the federal constitutional privilege. (See *Gomes* v. *Fried* (1982) 136 Cal.App.3d 924, 933-934 [186 Cal.Rptr. 605], and cases cited there; Annot. (1968) 19 A.L.R.3d 1361, 1375-1377.) On the other hand, where the plaintiff has no policy making authority, where her "control . . . over the conduct of government is at most remote and philosophical," she will not be held a public official. (*Franklin* v. *Benevolent etc. Order of Elks* (1979) 97 Cal.App.3d 915, 924 [159 Cal.Rptr. 131] [high school teacher not a public official]; accord *True* v. *Ladner* (Me. 1986) 513 A.2d 257, 262-264, and cases cited; contra, *Sewell* v. *Brookbank* (1978) 119 Ariz. 422 [581 P.2d 267, 270]; *Johnston* v. *Corinthian Television Corp.* (Okla. 1978) 583 P.2d 1101, 1103.)

Nothing in the record before us indicates plaintiff had any significant control over governmental *policy*. The same may be said, however, of a patrolman. Nonetheless, the power exercised by police officers, and their public visibility, naturally subject them to public scrutiny and make them public officials for purposes of defamation law. ■ Plaintiff too possessed considerable power over the lives affected by her work as a child welfare worker. Her assessments and decisions directly and often immediately determined whether the educational, social, medical and economic needs of developmentally disabled children in her care would adequately be met. She exercised far more control over the lives she touched than does a classroom teacher. (Compare *Franklin* v. *Benevolent etc. Order of Elks, supra,* 97 Cal.App.3d 915.)

Plaintiff's power is illustrated by events described by defendant Bower in the allegedly defamatory letter. According to Bower, plaintiff asked defendants to evaluate the case of a teenage girl, originally from Alaska, now in the foster care of a military family stationed in Alameda. The family was about to be transferred to Germany, and this called for an updated evaluation to determine whether the child should go with the family to Germany. According to the letter, defendants performed the evaluation, concluding that the parents and the child loved each other, that "the parents were quite suitable . . . and that the child should stay with them." After submitting a report to that effect, however, defendants learned that plaintiff had "t[aken] it upon herself to go and pick up the girl from the foster parents and send the girl back to Alaska." According to the letter, plaintiff justified this action by falsely stating defendants had recommended removing the child from the foster parents' custody.

Nowhere has plaintiff clearly asserted that Bower's account of the above episode is materially false or inaccurate.[5] However, even if the the account of the Alaska child is inaccurate in certain particulars, it illustrates the control a child welfare worker can exercise over the lives of disabled children and their care-giving families. This point was recognized in *Press, Inc.* v. *Verran* (Tenn. 1978) 569 S.W.2d 435, a libel action based on a series of newspaper articles charging that the plaintiff, a "junior social worker" in the state department of social services, had caused a mother to be "coerced into submitting to sterilization" as a condition for recovering custody of her children. (569 S.W.2d at p. 437.) The Tennessee Supreme Court upheld the trial court's ruling that the plaintiff was a public official. It acknowledged that "she ranks rather low in the hierarchy of state government; however, we do not perceive that the 'pecking order' is pertinent. To the [child's family] she had sufficient power to remove or cause their children to be taken from their custody and placed in a foster home, and to lay down conditions fraught with financial, physical, and psychological problems . . . . [¶] To the [family], she was the very epitome of government." (569 S.W.2d at p. 443.)

To the same effect is *Villarreal* v. *Harte-Hanks Communications* (Tex.Ct.App. 1990) 787 S.W.2d 131, cert. den. (1991) __ U.S. __ [113 L.Ed.2d 249, 111 S.Ct. 1316], where the court observed that the plaintiff, a

---

[5]The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 688, p. 140; *des Granges* v. *Crall* (1915) 27 Cal.App. 313, 315 [149 P. 777]; see *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 235 [11 Cal.Rptr. 97, 359 P.2d 465] [specific words or substance, in slander action]; *Okun* v. *Superior Court, supra,* 29 Cal.3d 442, 458 [slander action, noting libel rule].) The instant complaint alleges only that defendant's letter is false insofar as it "stated [plaintiff] was incompetent to do her job as a Child Welfare Worker I."

child protective services specialist, "exercised authority on the State's behalf. She served as an investigator, she had authority to recommend whether children could be removed from their homes, she could physically remove children from their environments and place them in foster care, she could establish conditions governing the circumstances by which parents could regain custody of their children, and she provided services to abused and neglected children. She also had substantial public contact relating to her official duties. Appellant certainly had greater control over governmental affairs than a court reporter, school teacher, attorney or justice of the peace." (787 S.W.2d at p. 135; see also *Green* v. *Northern Pub. Co., Inc.* (Alaska 1982) 655 P.2d 736, 741, cert. den. (1983) 463 U.S. 1208 [77 L.Ed.2d 1389, 103 S.Ct. 3539] [physician providing medical service to jails was public official]; *Brown* v. *Kitterman* (Mo. 1969) 443 S.W.2d 146, 155 [manager of community center].)

We hold that a social worker exercising this kind of power is more closely akin to a prosecutor or police officer than to a classroom teacher, and that plaintiff should be deemed a public official under the cited authorities.

### V.

We believe the foregoing conclusion, and the application of a knowing or reckless falsehood standard to this action, is further supported by the applicability of the constitutional right to petition the government for redress of grievances. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 3.)

■ Citizen complaints to appropriate government agents concerning the qualifications or job-related conduct of public servants, or prospective public servants, have been held privileged under the federal petition clause. (*Smith* v. *McDonald* (M.D.N.C. 1983) 562 F.Supp. 829, 842-843, affd. 737 F.2d 427, affd. *sub nom. McDonald* v. *Smith* (1985) 472 U.S. 479 [86 L.Ed.2d 384, 105 S.Ct. 2787]; *Stevens* v. *Tillman* (N.D.Ill. 1986) 661 F.Supp. 702, 712, affd. 855 F.2d 394, 402-403, cert. den. 489 U.S. 1065 [103 L.Ed.2d 809, 109 S.Ct. 1339]; see *Bradley* v. *Computer Sciences Corp.* (4th Cir. 1981) 643 F.2d 1029, 1033, cert. den. 454 U.S. 940; *Stern* v. *United States Gypsum, Inc.* (7th Cir. 1977) 547 F.2d 1329, 1345, cert. den. 434 U.S. 975 [54 L.Ed.2d 467, 98 S.Ct. 533]; *Lewis* v. *Elliott* (D.D.C. 1986) 628 F.Supp. 512, 517-518, 520.)

That these authorities correctly balance the applicable interests can be shown by analogy to the analysis in *Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at pages 344-345 [41 L.Ed.2d at pages 807-809], where the court identified two major factors favoring a higher standard of fault in actions involving public figures or high-ranking public officials: (1) such persons

typically have better opportunities than private individuals to "contradict the lie or correct the error and thereby to minimize the adverse impact upon reputation" (*id.*, at p. 344 [41 L.Ed.2d at pp. 807-808]); (2) public figures and officials have typically injected themselves into positions which "invite attention and comment," and have thus "voluntarily exposed themselves to increased risk of injury from defamatory falsehood." (*Id.*, at p. 345 [41 L.Ed.2d at p. 808].)

Similar factors are present in the typical case of a citizen's complaint about a public servant's qualifications or performance. Where such a complaint leads to adverse action by the employer, civil service proceedings offer the worker an unusually effective means of rebutting the lie, correcting the error, and minimizing the adverse impact on his or her reputation. "[W]hen charges of misconduct are made through official channels, as was the case here, the protective machinery of due process hearings is available, with full opportunity to refute that which is unfounded." (*Stern* v. *United States Gypsum, Inc., supra*, 547 F.2d at p. 1344; see Gov. Code, § 19570 et seq. [state civil service disciplinary procedures]; *id.*, § 31108 [minimum disciplinary protections for county employees under limited civil service system].) Indeed, plaintiff here did present her case through a civil service proceeding which, she alleges, not only resulted in her reinstatement but showed defendants' criticism to be unfounded. She apparently contends that this failed to vindicate her reputation in the eyes of her coworkers, such that she eventually felt compelled to take early retirement. Assuming this is true, however, it does not reduce the constitutional importance of what appears to have been an ample opportunity to effectively respond to the alleged libel.

Similarly, while every public employee has not assumed the risk of being defamed in every aspect of his or her life, all public employment is a matter of profound, abiding, and legitimate public interest, and everyone entering it invites public attention to the quality and efficiency of his or her work. The very term "public servant" reflects the concept that the public is, in a sense, the employer. The public pays directly for inefficiency, incompetence, and unfitness. There is no market mechanism to automatically correct for inefficiency; the "customer" of a public agency cannot choose to patronize a competing "business." A citizen aggrieved by a public servant's misfeasance, malfeasance, or nonfeasance often has no recourse but to complain to those in charge. If the complaint is justified it serves a public benefit. Its communication should not be discouraged by a rule which holds the complainant liable for negligently misperceiving the facts, overlooking something, or being swept away by the strong feelings which often accompany encounters with the agents of government.

■ Accordingly we believe plaintiff was required to plead a knowing or reckless falsehood in order to state a cause of action for defamation. She did not do so, and has never requested leave to do so. Therefore the trial court did not err by granting the motion for judgment on the pleadings as to the first cause of action.

## VI.

■ Plaintiff suggests that whatever the merits of her libel claim, she should have been permitted to proceed to trial on her claims for infliction of emotional distress and simple negligence. In *Blatty* v. *New York Times Co., supra,* 42 Cal.3d at page 1045, the court held that regardless of the label placed on a cause of action, claims "hav[ing] as their gravamen the alleged injurious falsehood of a statement . . . must satisfy the requirements of the First Amendment." (See also *Hofmann Co.* v. *E. I. Du Pont de Nemours & Co., supra,* 202 Cal.App.3d at pp. 402-404; *Hustler Magazine* v. *Falwell, supra,* 485 U.S. 46, 56 [99 L.Ed.2d 41, 52-53].) Here we have held that the First Amendment requires plaintiff to plead and prove a knowing or reckless falsehood. Since she has failed to plead one, the entire complaint was properly dismissed.

## VII.

■ Defendants assert that they were entitled to recover attorneys fees under Code of Civil Procedure sections 1021.7 and 128.5.[6] These statutes presuppose that the action was brought in bad faith, or without good faith and reasonable cause. The trial court's denial of fees will be upheld if it is sustainable on any ground, including an implied finding that plaintiff acted in good faith in filing and maintaining this action. The record is silent with respect to the court's actual reasons and we certainly cannot say that bad faith appears as a matter of law. Accordingly this portion of the judgment is also affirmed.

Because of this analysis it is unnecessary to reach the question whether Code of Civil Procedure section 1021.7 is intended to permit recovery by

---

[6]Code of Civil Procedure section 1021.7 provides: "In any action for damages arising out of the performance of a peace officer's duties, brought against a peace officer . . . , or against a public entity employing a peace officer or in an action for libel or slander brought pursuant to Section 45 or 46 of the Civil Code, the court may, in its discretion, award reasonable attorney's fees to the defendant or defendants as part of the costs, upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause."

Code of Civil Procedure section 128.5, subdivision (a), provides in part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." Subdivision (b) defines "actions or tactics" to include "the filing and service of a complaint or cross-complaint."

defamation defendants other than peace officers or agencies employing them. (See *Planned Protective Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1 [245 Cal.Rptr. 790], review den. [statute applies only to peace officers and agencies]; compare *Masson* v. *New Yorker Magazine, Inc.* (9th Cir. 1989) 895 F.2d 1535, 1547-1548, reversed on other grounds, __ U.S. __ [115 L.Ed.2d 447, 111 S.Ct. 2419] [assumes that private libel defendant can invoke statute, but affirms denial of fees].)

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

A petition for a rehearing was denied September 6, 1991, and the petition of appellant Kahn for review by the Supreme Court was denied November 27, 1991. Baxter, Jr., and George J., were of the opinion that the petition should be granted.