**Joseph HADDAD, Plaintiff,**

v.

**Scott E. WALL, Defendant.**

**No. EDCV98–0130 RTVAPX.**

United States District Court,
C.D. California.

Aug. 8, 2000.

E. Thomas Barham, Jr., Shirley A. Ostrow, Law Offices of Barham and Ostrow, Los Alamitos, CA, for plaintiff.

---

Bruce E. Disenhouse, Kinkle, Rodiger and Spriggs, A Professional Corporation, Riverside, CA, for defendant.

**AMENDED ORDER GRANTING 1) PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION, AND 2) FOR A PERMANENT INJUNCTION.**

TIMLIN, District Judge.

The court has read and considered Plaintiff Joseph Haddad ("Haddad")'s motion for summary adjudication,[1] Defendant California Department of Highway Patrol Officer Scott E. Wall ("Wall")'s opposition, and Haddad's reply. Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND

Haddad is challenging the constitutionality of California Civil Code § 47.5 ("Section 47.5") which authorizes a defamation suit by a peace officer for false statements made in citizen complaints regarding the officer's conduct to his or her law enforcement agency employer.

Haddad initiated the instant action in the United States District Court for the Central District of California—Eastern Division. He alleges in his Third Amended Complaint ("TAC") the following claims against Wall[2]: 1) violation of the Fourteenth Amendment—denial of procedural due process—pursuant to 42 U.S.C. § 1983 ("Section 1983"), 2) violation of the First Amendment pursuant to Section 1983, and 3) violation of the Fourteenth Amendment—denial of equal protection—pursuant to Section 1983. Haddad requests declaratory and injunctive relief, seeking a declaration that Section 47.5 is unconstitu-

tional on its face and as applied and an injunction prohibiting Wall from executing on the judgment Wall obtained against him in state court. Haddad now moves the court for summary adjudication on his Second, Third, and Fourth claims.

## II.

### UNCONTROVERTED MATERIAL FACTS[3]

The following are uncontroverted material facts supported by admissible evidence:

On May 14, 1997, Haddad received a traffic citation from Wall who was employed by the State of California as a highway patrolman. The traffic citation alleged a violation of California Vehicle Code § 22450(a) (Failure to Stop for a Traffic Sign).

Haddad pled not guilty to the violation. On June 30, 1997, a court trial was held in the Long Beach Municipal Court ("municipal court"), at which Wall testified. Haddad was convicted of violating California Vehicle Code § 22450(a). The municipal court imposed a fine of $104, which Haddad paid.

After his conviction, Haddad made a telephonic complaint to a CHP official stating that Wall testified falsely as to two matters during the municipal court trial. On December 29, 1997, Wall filed a complaint against Haddad pursuant to Section 47.5 in the Long Beach Municipal Court, Small Claims Division ("small claims court") alleging that Haddad knowingly filed a false complaint with his employer accusing Wall of perjury, a felony. After initiating this action, Wall wrote to Haddad stating that Wall was entitled to file an action in accordance with Section 47.5

---

1. Plaintiff styles this motion as a motion for summary judgment as to his second, third, and fourth claims. However, the court construes the motion as one for summary adjudication of the constitutionality of Cal.Civ.Code § 47.5.

2. Haddad's initial complaint was filed against executive and legislative officials of the State

of California and his second amended complaint was filed against the State of California as well, but Wall is the only remaining defendant in this action.

3. All of Wall's evidentiary objections are overruled. The court grants Haddad's and Wall's requests for judicial notice.

and demanded payment of $5,000. Trial was held in the small claims court on March 31, 1998 and judgment was entered for Wall against Haddad for $5,000 and $40 in costs.

On April 23, 1998 Haddad filed a Notice of Appeal seeking a trial de novo in Superior Court of the State of California in and for the County of Los Angeles ("LASC"). On or about May 26, 1998, Haddad filed an Ex Parte Application to Stay All Proceedings, or in the alternative to order Wall to pursue his claims for relief in this federal court action. It was denied. Wall prevailed in the trial de novo held on June 10, 1998, and was awarded $5,000 in damages, $150 in attorneys' fees, and $40 in costs.

## II.

## ANALYSIS

### A. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issue of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987) (quoting Fed.R.Civ.P. 56(e) (emphasis add-

ed) and citing Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. See T.W. Elec. Serv., 809 F.2d at 630–31 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In order to defeat a motion for summary judgment, the plaintiff must present significant probative evidence tending to support the complaint. See T.W. Elec. Serv., 809 F.2d at 630. This court thus applies to either party's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

### B. Constitutionality of Section 47.5[4]

"The First Amendment generally prevents government from proscribing speech

---

**4.** Haddad brings this action under Section 1983 to challenge the constitutionality of Section 47.5. Wall contends that Haddad fails to state a viable Section 1983 claim because

Haddad has not alleged the deprivation of a federal right. To prove a violation of Section 1983, Haddad must show that Wall 1) de-

..., or even expressive conduct ..., because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) (internal citations omitted). "Content-based regulations are presumptively invalid." *Id.* However, certain "areas of speech can, consistently with the First Amendment, be regulated because of their constitutionally proscribable content ..." *Id.* at 383, 112 S.Ct. at 2543. Defamation is such an area of speech that may be regulated, provided the regulations meet the constitutional standards set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *New York Times* provides that defamation of public officials can only be proscribed if the statement was made with "actual malice." *New York Times*, 376 U.S. at 279–280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686.

The *R.A.V.* Court made clear that these categories of speech are not "entirely invisible to the Constitution." *See id.* at 383–384, 112 S.Ct. at 2543. Therefore, although the prohibition against content discrimination applies differently in the context of proscribable speech than in the area of fully protected speech, *see id.* at 387, 112 S.Ct. at 2545, there are still limits on the ability of government to regulate these categories of speech. *See id.* at 383–384, 112 S.Ct. at 2543. For example, "the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government." *Id.* at 384, 112 S.Ct. at 2543.

■ Proscribable speech, such as defamation, may be regulated: a) "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable," *id.* at 388, 112 S.Ct. at 2545; b) if a content-defined subclass of the proscribable speech "happens to be associated with particular 'secondary effects' of the speech, so that the regulation is justified without reference to the content of the ... speech," *id.* at 389, 112 S.Ct. at 2546; or c) if "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot," *id.* at 390, 112 S.Ct. at 2547. If the regulation of the proscribable speech is content-based and does not fall under one of the above three categories, it is subject to strict scrutiny. *See Valley Broadcasting Co. v. United States*, 107 F.3d 1328, 1330 n. 3 (9th Cir.1997) ("*R.A.V.* requires that the content-based regulation of proscribable content be subject to strict review.")

■ Under California Civil Code § 47 ("Section 47"), "most publications and broadcasts arising out of official government duties or proceedings are privileged, and therefore cannot be the subject of a defamation action." *Gritchen et al. v. Collier et al.*, 73 F.Supp.2d 1148, 1150 (C.D.Cal.1999); *see also* Section 47.[5] The privilege in Section 47 extends to com-

---

prived him of a right secured by the Constitution, and 2) Wall acted under color of law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *see also Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir.1989). Wall contends that Haddad fails to demonstrate that he was deprived of a right provided by the Constitution because he cannot assert a genuine threat of enforcement under Section 47.5 or that the statute will impair his constitutional rights. However, this is not a situation where action under a statute is merely threatened or is still pending. Wall has already sued Haddad for defamation pursuant to Section 47.5 in small claims court and has been awarded a judgment of $5,000 in damages, plus costs and

attorney's fees. Therefore, Haddad may challenge the constitutionality of Section 47.5 pursuant to Section 1983.

5. Section 47 provides, in pertinent part:
   A privileged publication or broadcast is one made:
   (a) In the proper discharge of an official duty.
   (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title I of Part 3 of the Code of Civil Procedure....

plaints by citizens against public officials filed with an administrative agency. *See Imig v. Ferrar,* 70 Cal.App.3d 48, 55, 138 Cal.Rptr. 540 (1977). Section 47.5 creates an exception to this general privilege afforded citizen complaints against public officials in California, and allows peace officers to bring defamation suits against individuals who falsely charge them with misconduct, criminal conduct, or incompetence. *See* Section 47.5; *see also Gritchen,* 73 F.Supp.2d at 1150. Section 47.5 provides:

> Notwithstanding Section 47, a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibited a reckless disregard for ascertaining the truth.

■ Had the California legislature refrained from enacting any legislation regarding defamation suits, thereby allowing defamation actions by public officials to the full extent permitted by the United States Constitution, there would not be any constitutional concerns. Alternatively, California could have barred all defamation suits for statements made against public officials, thereby creating protections in addition to those provided by the United States Constitution. However, by providing a privilege for statements made against public officials generally and then creating an exception to such privilege for

complaints filed against peace officers, California treats defamatory statements made against peace officers differently than all other public officials.[6] California defamation law thus creates a distinction based on the content of the statements—whether the complaints are about peace officers or other public officials. *See Gritchen,* 73 F.Supp.2d at 1152 (concluding Section 47.5 discriminates on the basis of content because "speech about one group of public officials is treated differently than speech about other public officials.")

Defamation is speech which the government may regulate or proscribe. *See R.A.V.,* 505 U.S. at 383, 112 S.Ct. at 2543. The court will assume without deciding that Section 47.5 only authorizes defamation actions which meet the standard set forth in *New York Times.*[7] However, as set forth in *R.A.V.,* even proscribable speech may not be regulated without limitations. Therefore, Section 47.5, as a content-based restriction, must fall within one of the three categories enumerated by the *R.A.V.* Court, or be subject to strict scrutiny.

**1. Whether the Basis for the Content–Discrimination Consists of the Very Reason the Entire Class of Speech is Proscribable**

Content discrimination as to proscribable speech such as defamation is permissible when it is based on the very reason the entire class of speech at issue is proscribable because it does not pose a significant danger of discrimination based on ideas or viewpoints. *See R.A.V.,* 505 U.S. at 388, 112 S.Ct. at 2545. The *R.A.V.* Court explains: "[s]uch a reason, having been adjudged neutral enough to support exclusion of the entire class of speech from

---

6. California's statutory scheme of applying a different defamation rule to complaints filed against peace officers than to complaints filed against all other public officials is unlike any other state's. *See Gritchen,* 73 F.Supp.2d at 1150.

7. A public official may not recover "damages for a defamatory falsehood relating to his official duties unless he proves the statement was made with "actual malice"—that is with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 279–280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686.

First Amendment protection, is also neutral enough to form the basis of distinction within the class." *Id.* at 388, 112 S.Ct. at 2545–2546. As an illustration of this principle, the *R.A.V.* Court offered the following example: "A state might choose to prohibit only that obscenity which is the most patently offensive in its prurience— i.e., that which involves the most lascivious displays of sexual activity." *Id.* at 388, 112 S.Ct. at 2546.

#### a. *Basis for Proscribing Defamation Directed at Public Officials*

The underlying reasons defamation may be proscribed are twofold: 1) society's strong interest in preventing and redressing attacks upon reputation, *see Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966), and 2) "calculated falsehoods" are not expression protected by the First Amendment. *See Time, Inc. v. Firestone*, 424 U.S. 448, 472, 96 S.Ct. 958, 973, 47 L.Ed.2d 154, *citing Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964); *see also Gritchen*, 73 F.Supp.2d at 1152 ("Defamatory statements are proscribable because they are false and injurious to their targets.")

However, statements made against public officials are treated differently under the First Amendment than are statements made against private individuals relating to matters that are not of public concern. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345–346, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). Pursuant to *New York Times*, statements made against public officials are afforded more protection in that public officials may only recover for defamation "on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* at 342, 94 S.Ct. at 3008. The primary concerns motivating the *New York Times* Court to afford greater protection to statements made against public officials were as follows: 1) "a strong interest in debate on public issues," and 2) "a strong interest in the debate about those persons who are in

a position significantly to influence the resolution of the issues." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966). The Court further noted that "[c]riticism of government is at the very center of the constitutionally protected area of free discussion." *Id.*

The Supreme Court declined to extend the *New York Times* privilege to defamatory statements against private individuals. *See Gertz*, 418 U.S. at 343, 94 S.Ct. at 3008–3009. The *Gertz* Court gave greater deference to the state interest in compensating injury to reputation when the victim was a private individual in part because private individuals tend to lack effective opportunities for rebutting false statements. *See id.* ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.") Thus, the Court concluded, "[p]rivate individuals are more vulnerable to injury, and the state interest in protecting them is correspondingly greater." *Id.* at 344, 94 S.Ct. at 3009. Furthermore, and more significant to the Court, was the normative distinction it drew between private and public defamation plaintiffs— "public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." *Id.* The Court explained that public officials had to accept certain necessary consequences of being involved in public affairs, including running the risk of closer public scrutiny. *See Id.* at 344–345, 94 S.Ct. at 3009–3010.

Thus, the Supreme Court has been clear about the underlying reasons defamation may be proscribed and why public officials' recourse for defamation is more limited than private individuals. California's treatment of defamation regarding peace officers as distinguished from all other public officials is constitutionally acceptable under *R.A.V.* only if the content-based

distinction is premised on the same reasoning as discussed above.

### b. *Basis for Content Discrimination— Treating Peace Officers Differently*

Wall has not demonstrated how peace officers are distinguishable from other public officials on any of the grounds upon which defamation law has been formed and balanced against First Amendment concerns, such as particular vulnerability to reputational injury due to lack of access to effective means for rebuttal, the extent to which individuals have voluntarily exposed themselves to public scrutiny, and the greater First Amendment concerns relating to speech critical of government and public officials.

Courts have consistently treated peace officers as "public officials" under *New York Times, see Gomes v. Fried et al.,* 136 Cal.App.3d 924, 933, 186 Cal.Rptr. 605, 610 (1982). The reasoning of these courts illustrates why singling out peace officers for differential treatment relating to defamation, as opposed to other public officials, cannot be justified on the same bases underlying defamation law. As noted in *Kahn v. Bower et al.,* 232 Cal.App.3d 1599, 284 Cal.Rptr. 244 (1991):

the touchstone for public official status is the extent to which the plaintiff's position is likely to attract or warrant scrutiny by members of the public. Such scrutiny may follow either because of the prominence of the position in the official hierarchy, or because the duties of the position tend naturally to have a relatively large or dramatic impact on members of the public. Illustrative of the latter situation are the many cases holding that lower echelon law enforcement officers are public officials for purposes of federal constitutional privilege.

*Id.* at 1611, 284 Cal.Rptr. at 251. The *Gomes* court, in concluding why peace officers have been and should be treated as public officials, found that the duties of a patrolman "are peculiarly 'governmental' in character and highly charged with the public interest." *Gomes,* 136 Cal.App.3d at 933, 186 Cal.Rptr. at 610 (quoting *Cour-*

*sey v. Greater Niles Township Publishing Corp.,* 40 Ill.2d 257, 239 N.E.2d 837, 841 (1968)). The court continued to explain:

It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an 'on the street level' than in the qualifications and conduct of other comparably low-ranking government employees.... The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed toward the performance of that officer cannot be constitutionally inhibited by the threat of prosecution under State libel laws.

*Id.* (quoting *Coursey,* 239 N.E.2d at 841); *see also, Imig,* 70 Cal.App.3d at 56, 138 Cal.Rptr. at 544 ("We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands.")

The analyses in the cases noted above support encouraging public discussion regarding peace officers' conduct just as much as that of other public officials, rather than discouraging public comment by affording less protection to defamatory statements made against peace officers. California courts have noted the dramatic impact peace officers tend to have on the public and the great potential for social harm if power by peace officers is abused. *See Kahn,* 232 Cal.App.3d at 1611, 284 Cal.Rptr. at 251; *see also Gomes,* 136 Cal. App.3d at 933, 186 Cal.Rptr. at 610; *Imig,* 70 Cal.App.3d at 56, 138 Cal.Rptr. at 544. Debate on public issues and criticism of peace officers, just as with other public officials, is speech "at the very center of the constitutionally protected area of free discussion." *Rosenblatt,* 383 U.S. at 85, 86 S.Ct. at 675–676. Furthermore, peace officers, as other public officials, have volun-

tarily exposed themselves to increased risk of injury from defamatory statements. Wall has not demonstrated by any uncontroverted evidence that peace officers lack effective opportunities for rebutting such statements compared to other public officials. Finally, the court agrees with the *Gritchen* court which noted, "[n]othing about the position of a peace officer is inherently tied to the polices underlying the law of defamation, as compared to the position of other government officers." *Gritchen*, 73 F.Supp.2d at 1152. Thus, the court concludes there is nothing distinguishable regarding the position or duties of peace officers which would support treating them differently from other public officials as to the law of defamation and privileges associated therewith.

Wall argues that in enacting Section 47.5, the California legislature determined the harm caused by defamation to be sufficiently grave with respect to peace officers because a peace officer's contact with the public tends to be antagonistic in nature, and thus generates more frequent false and unfounded complaints. Notably, Wall fails to cite any evidence supporting these supposed legislative findings. However, even if the California legislature did make such findings, those "findings" support the proposition that peace officers would be less entitled to protection from defamatory statements. As the Supreme Court explained in *Gertz*, public officials are less deserving of protection in part because they have "voluntarily exposed themselves to increased risk from defamatory falsehood concerning them." *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3010. Thus, the fact that more complaints, including false complaints, may be filed against peace officers with their supervisors cannot be relied upon to support affording peace officers greater protection against defamatory statements than other public officials. The greater risk of public scrutiny is a necessary consequence of being involved in public affairs. *See id.* at 344, 94 S.Ct. at 3009; *see also Kahn*, 232 Cal.App.3d at 1611, 284 Cal.Rptr. at 251 (noting law enforcement officers have been considered public offi-

cials under *New York Times* because the duties of their position "tend naturally to have a relatively large or dramatic impact on members of the public.")

Therefore, the court concludes the basis for the content-discrimination regarding defamation directed at peace officers does not consist of the very reason the entire category of speech is proscribable.

### 2. Secondary Effects

A content-defined subclass of proscribable speech may be regulated if it "happens to be associated with particular 'secondary effects' of the speech, so that the regulation is justified without reference to the content of the ... speech," *R.A.V.*, 505 U.S. at 389, 112 S.Ct. at 2546. Wall does not contend Section 47.5 has a regulatory purpose because secondary effects are associated with this subclass of proscribable speech. Likewise, the court cannot conceive of any legitimate secondary effects to justify this content-based distinction. Therefore, the court concludes Section 47.5 does not regulate a subclass of proscribable speech associated with particular secondary effects of the speech.

### 3. No Realistic Possibility that Official Suppression of Ideas is Afoot

Content-based subclasses of proscribable speech may be regulated if "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot," *R.A.V.*, 505 at 390, 112 S.Ct. at 2547. The *R.A.V.* Court offers the following example of this category: "We cannot think of any First Amendment interest that would stand in the way of a State's prohibiting only those obscene motion pictures with blue-eyed actresses." This court concludes that the content discrimination in Section 47.5 is not analogous to the blue-eyed actress example, and thus agrees with the *Gritchen* court which concluded "[Section] 47.5 is inherently about speech—it is a direct restriction on the speech of citizen complaints." *Gritchen*, 73 F.Supp.2d at 1152.

Accordingly, the court concludes Section 47.5 can not be constitutionally justified by any of the regulatory purposes categorized by *R.A.V.*

### 4. *Strict Scrutiny*

Because Section 47.5 is content-based and does not fall within any of the categories delineated by *R.A.V.*, its facial constitutionality must be analyzed under the strict scrutiny standard. *See Valley Broadcasting Co.*, 107 F.3d at 1330 n. 3. Therefore, Section 47.5 must be "narrowly tailored to serve compelling state interests." *R.A.V.*, 505 U.S. at 395, 112 S.Ct. at 2549.[8]

It is Wall's burden to demonstrate that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988) (citations omitted). Wall failed to suggest any compelling state interests served by Section 47.5 or even argue that it is narrowly tailored. However, even though Wall has clearly failed to meet this burden, the court will address this issue.

The court cannot discern any compelling state interest that is served by Section 47.5 allowing defamation lawsuits by peace officers against citizen complainants while providing a privilege for such type complaints against other public officials. Although Wall contends there are frequent false and unfounded complaints against peace officers, he has not submitted any evidence to support this contention. As in *Gritchen*, "[n]o showing has been made that there is a serious problem of false complaints against police." *Gritchen*, 73 F.Supp.2d at 1153.

However, even if the content discrimination in Section 47.5 does serve compelling state interests, it is not narrowly tailored to serve such interests. Haddad demonstrates through uncontroverted evidence that there are numerous non-speech restrictive means by which peace officers are protected from false complaints, such as through internal oversight procedures. Additionally, the possibility of perjury charges deters the filing of false complaints if a police agency requires that all complaints against its peace officers be by declaration under penalty of perjury. The court concurs with *Gritchen* in that "[i]f these protections are insufficient, California may strengthen existing safeguards or provide procedures to ensure police officers' careers are not put in jeopardy until after a complaint's truth is verified." *Gritchen*, 73 F.Supp.2d at 1153. Hence, this court concludes that there are sufficient non-speech related means to protect peace officer's from false complaints of misconduct, criminal conduct, or incompetence, and thus, Section 47.5 is not narrowly tailored. *See, e.g., R.A.V.*, 505 U.S. at 395, 112 S.Ct. at 2550 (concluding that the existence of adequate content-neutral alternatives significantly undercuts any defense of a content-based statute).

Therefore, the court concludes that Section 47.5 impermissibly discriminates on the basis of the content of the speech which it purports to regulate, and thus facially violates the First Amendment as incorporated in the Fourteenth Amendment.[9] Accordingly, Haddad's motion for summary adjudication will be granted.

### III.

### DISPOSITION

IT IS ORDERED THAT:

---

8. Wall contends that Section 47 contains many subject matter distinctions, and thus argues that if "Section 47.5 contravenes the First Amendment, then, so does Section 47 itself." Haddad's motion merely questions the constitutionality of Section 47.5. If Wall wishes to challenge the constitutionality of Section 47, he must do so in a separate motion.

9. Because the Court concludes Section 47.5 facially violates the First Amendment, it need not address whether Section 47.5 violates the First Amendment as applied or whether it violates the Equal Protection Clause of the Fourteenth Amendment.

1) Haddad's motion for summary adjudication is granted;

2) Section 47.5 is declared unconstitutional on its face in violation of the First Amendment as incorporated in the Fourteenth Amendment; and

3) Wall is enjoined from executing on the judgment in his favor and against Haddad as entered in the LASC.