[Civ. No. 66904. Second Dist., Div. Five. Sept. 27, 1983.]

DAVID P. LEWIS et al., Plaintiffs and Appellants, v.
PETER V. UEBERROTH, Defendant and Respondent.

**COUNSEL**

Arnold G. Regardie for Plaintiffs and Appellants.

Latham & Watkins, Philip F. Belleville and Joseph J. Wheeler for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—This is an action for libel.

Respondent Peter V. Ueberroth is the President of the Los Angeles Olympic Organizing Committee (LAOOC), the organization responsible for hosting and conducting the 1984 Olympic Games in Los Angeles. Appellants

David P. Lewis and Arnold G. Regardie are the president and vice president, respectively, of the Coalition to Save the Sepulveda Basin, a nonprofit corporation formed by a group of San Fernando Valley citizens "to protect the area in the San Fernando Valley known as the Sepulveda Basin against any use or development of that area which would destroy its value as a recreational and park area." At the time this controversy arose, both appellants were "active and vocal community leaders" opposed to the various proposals to construct Olympic sports facilities in the Sepulveda Basin, which proposals were strongly advocated by Ueberroth and the LAOOC.

In May 1981, Ueberroth was interviewed by a reporter from "Big Valley" magazine, and the interview was published in the magazine's May issue under the heading "Olympics in the Valley?" During the interview, Ueberroth made the following remarks:

"BIG VALLEY: There's been talk that the Valley is going to miss out due to its opposition of the Olympics in the Sepulveda Basin. What are your feelings on this matter?

"UEBERROTH: I think that there is a small group of well meaning, highly vocal—terribly led people who have been successful at convincing the Olympic Committee that the Valley should get nothing that they might be able to do privately. The leadership of this well meaning group is not well meaning. They are led by politicians whose real intent is to use these people to further their own identifications and seek public office, to put their names in the leadership group. Several are either in or have sought public office, or have plans to do so. People have tried to say that the Olympics will do a lot of negative things—which are untrue. Other communities in Southern California are not suffering from this negative leadership. They are enjoying the benefits of what has been done and what will continue to be done.

"BIG VALLEY: How many people are actually involved in the group of which you are speaking?

"UEBERROTH: I don't even know if it's formal. But, I would guess no more than a couple of hundred people, and half a dozen leaders. These are the so-called No Olympic Tax People and Save the Sepulveda Basin Groups."

Later on in the interview, the following exchange occurred:

"BIG VALLEY: Your Committee is non profit. Should there be a surplus of funds, where will the monies go?

"UEBERROTH: I was thinking of giving them to the political action committee of the San Fernando Valley—to save the Sepulveda Basin! I hope someone investigates them—they have been raising money and having mailings. I hope someone checks where did all the money go that was paid into them—for advertisements and legal fees and those things. It would be interesting."

Appellants brought the present action for libel based upon these portions of the interview. Ueberroth demurred to the complaint and the trial court sustained the demurrer without leave to amend and dismissed the action. We affirm the judgment of dismissal.

■ "An essential element of libel, and it is on this point that the complaint is fatally defective, is that the publication in question must contain a false statement of *fact* . . . . The reason for the rule, well stated by the [United States Supreme Court], is that 'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. [Citations.] In this context courts apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse.

"The critical determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law. [Citations.] The distinction frequently is a difficult one, and what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." (*Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425].)[1]

---

[1]In *Gregory,* the president and vice president of a local union brought a defamation action against an employer and other members of the union. Among the statements alleged to be defamatory, and held to be not actionable, are the following which bear a striking similarity to the statements in issue here: "It is, indeed, unfortunate that our employees have had to wait so long because of apparent self-interests of a few leaders within UAW Local 148. Apparently there were some internal politics within Local 148 and other areas of the UAW which certain individuals were using to seek personal gain and political prestige rather than to serve the best interests of the members they were supposed to represent." (17 Cal.3d at p. 599.)

■ Appellants' status as "public figures" is also significant,[2] for those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" are required to meet a higher standard for recovery than private individuals. (*Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 345 [41 L.Ed.2d 789, 808, 94 S.Ct. 2997].) The public figure has chosen to step into the limelight and therefore runs the risk of closer public scrutiny. What might be considered a statement of fact as to a private individual may be considered as a statement of an opinion as to a public figure. (*Kaufman* v. *Fidelity Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 913, 920 [189 Cal.Rptr. 818].) This is because the First Amendment affords greater protection to speech which arises during a public debate, and in fact such protection extends even to some nontruths in order to protect "speech that matters." (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at p. 341 [41 L.Ed.2d at p. 806].)

■ Applying these criteria to the case at hand, we view the statements made by Ueberroth as opinions, and clearly within First Amendment protection. We first examine the context within which the statements were made. The "Olympics in the Valley" controversy was one in which emotions were obviously running high. The Coalition viewed itself as David fighting the Olympic Goliath, "the multi-million-dollar Olympic organization that's backed by the coffers of nations and global conglomerates."[3] On the other side, the Ueberroth interview is imbued with the Olympic fervor of the LAOOC. It appears to be Ueberroth's opinion that views of those who oppose Olympic facilities in the Valley border on the unpatriotic, and the leaders of the anti-Olympic movement have led the people of the Valley astray. Viewed in this context, the statements of Ueberroth are merely those "of the 'kind typically generated in a spirited dispute in which the loyalties and subjective motives of rivals are attacked and defended.'" (*Desert Sun Publishing Co.* v. *Superior Court* (1979) 97 Cal.App.3d 49, 53 [158 Cal.Rptr. 519], citing *Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 681 [150 Cal.Rptr. 258, 586 P.2d 572].) They are statements of opinion in which Ueberroth expresses his strong disagreement with appellants' views and his objection to their cause. Such statements are well within the bounds of protected public debate and cannot be the basis for a libel action.

---

[2]Although appellants do not concede the point that they were in fact "public figures" for purposes of this controversy, their self-proclaimed status as "active and vocal community leaders" would appear to resolve this issue.

[3]The LAOOC was so referred to by the Coalition in its reply to the Ueberroth interview, published in a subsequent issue of "Big Valley" magazine.

The judgment of dismissal is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.