Marcelo **RODRIGUEZ**, Plaintiff–Appellant,

v.

Georgios Kyriacos **PANAYIOTOU**, Defendant–Appellee.

No. 00–56923.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2002.

Filed Dec. 3, 2002.

Richard F.G. Thomas, Hermosa Beach, CA, for the plaintiff-appellant.

Jeffrey M. Tillotson, Dallas, TX, for the defendant-appellee.

Before REINHARDT, TROTT, and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge REINHARDT.

## OPINION

TASHIMA, Circuit Judge.

Plaintiff–Appellant Marcelo Rodriguez ("Rodriguez") brought this action against Defendant Appellee Georgios Kyriacos Panayiotou, aka George Michael ("Michael"), for slander per se and intentional infliction of emotional distress, based on statements made by Michael in magazine and television interviews regarding Rodriguez's 1998 arrest of Michael, and the lyrics and video of Michael's newly-released song *Outside.*[1] The action was dismissed with prejudice for failure to state a claim upon which

---

1. Michael, a citizen of Great Britain, is a well-known pop singer and song writer.

relief could be granted. Rodriguez timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I. BACKGROUND

On April 7, 1998, Rodriguez, a police officer for the City of Beverly Hills, California, was working with his partner in Will Rogers Park in Beverly Hills due to complaints of lewd acts taking place in the men's restroom. Rodriguez entered the park's restroom after observing Michael enter. As he exited one of the stalls, Rodriguez saw Michael fully exposed and engaging in a lewd act. Rodriguez left the restroom, and he and his partner arrested Michael, as he exited the restroom, for disorderly conduct, in violation of California Penal Code § 647(a). Michael pled no contest to the charge. He was fined and placed on probation, which included community service and a requirement to undergo psychological counseling.

In September 1998, Michael released a new song and music video entitled *Outside*, which made vague references to and parodied the incident. A few months later, in a series of magazine and television interviews to promote his new album, Michael responded to questions regarding the arrest with allegations that Rodriguez had entrapped him. Michael claimed that Rodriguez had induced him to engage in the lewd act for which he was arrested by first exposing himself to and masturbating[2] in front of him.[3] Rodriguez contends that these statements are slanderous per se under California Civil Code § 46 because they accuse him of committing the crime of engaging in a lewd act in a public place and of participating in conduct that would disqualify him from serving as a police officer.

Rodriguez commenced a damage action against Michael in state court, which Michael removed to federal court on diversity grounds. Michael then moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The district court dismissed the slander and intentional infliction of emotional distress claims with leave to amend and dismissed the negligent infliction of emotional distress claim with prejudice.

Rodriguez then filed an amended complaint, which Michael again moved to dismiss under Rule 12(b)(6). The district court dismissed Rodriguez's amended complaint in its entirety with prejudice, holding that Michael's statements were non-actionable, non-defamatory expressions of

---

**2.** While most of Michael's statements claimed that Rodriguez had "waived [sic]" or showed his genitals to him, Michael's December 1998 comments to the *Globe Daily* stated that Rodriguez "walked in, started masturbating and then left."

**3.** Rodriguez alleges eight such statements in his complaint. For example, in the December 1998 issue of *British GQ*, Michael stated:

> People say to me "C'mon, you must have known it was a cop." But how would I know that? There's a man standing there, six feet two, great-looking, and waiving [sic] his dick about and staring at me. At a time like that, you don't think, "There's Karl Malden." You can't spot a copper, especially when he's wearing a pair of shorts

and coming on to you in a Beverly Hills toilet. It's the last thing you expect. I didn't think taxpayers paid people to go around as professional wankers (masturbators). I was absolutely stunned when he turned out to be a copper. But he is standing there and his game is, I'll show you mine, you show me yours, and then I'll f— king nick you.

He similarly stated, on December 4, 1998, to the BBC:

> Ultimately, you don't see it as a massive risk if there is no one else around, and if there is someone waiving [sic] his genitals around in front of you, you don't think they're an office [sic] of the law. I fell for the trick. It was done very well.

opinion, and that Rodriguez's intentional infliction of emotional distress claim failed as a matter of law because the statements, lyrics, and video did not amount to "extreme and outrageous conduct." *See Ess v. Eskaton Properties, Inc.*, 97 Cal.App.4th 120, 118 Cal.Rptr.2d 240, 247 (2002). Rodriguez appeals only the dismissal of his slander claim based on Michael's interview statements.[4]

## II. STANDARD OF REVIEW

A dismissal for failure to state a claim for which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), is reviewed de novo. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001). On review, we take all of the allegations of material fact stated in the complaint as true and construe them in the light most favorable to the nonmoving party. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir.2002). A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002) (citation omitted).

■ A district court's interpretation of state law is reviewed de novo. *See Pacific Fisheries Corp. v. HIH Cas. & Gen. Ins., Ltd.*, 239 F.3d 1000, 1003 (9th Cir.2001).

## III. DISCUSSION

### A. California Civil Code § 46

■ Under California law, slander per se is a "false and unprivileged publication, orally uttered," which fits into at least one of four types of utterances listed in the statute.[5] *See* Cal. Civ.Code § 46. Rodriguez contends that Michael's statements are slanderous under two of the statutory categories: (1) by charging Rodriguez with committing a crime, and (2) by tending to "directly injure him" with respect to his profession by "imputing to him [a] general disqualification" to serve as a police officer. *See* Cal. Civ.Code § 46(1) & (3).

While Michael's statements may not explicitly charge Rodriguez with committing a crime under California law, the statements challenge the legality of Rodriguez's conduct.[6]

Moreover, the specific actions alleged by the statements satisfy the elements required to establish a violation of California Penal Code § 647(a), which states that "every person who ... engages in lewd or dissolute conduct in any public place or in any place open to the public" is "guilty of disorderly conduct, a misdemeanor."

Michael argues nonetheless that his statements did not charge Rodriguez with a crime, contending that the alleged conduct was not criminal because Rodriguez

4. On appeal, Rodriguez does not raise or argue the dismissal of his infliction of emotional distress claims and his claims based on the lyrics and video of *Outside*. These claims are therefore waived. *See Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir.1992).

5. A fifth category of false oral utterances "[w]hich, by natural consequence, cause[ ] actual damage" can also serve as the basis for a slander action. Cal. Civ.Code § 46.

6. In November 1998, on the David Letterman show, Michael said, "He played a game called

... I'll show you mine, you show me yours and I'll take you down to the police station. Point is, the police are not allowed to do something illegal in order to make you do something illegal." Michael's statement in the December 1998 issue of *Q* that "[he didn't] understand why it is more legal for a cop to go into a toilet and wave his dick at people than it is for someone who wants to do it" similarly indicated that he believed that Rodriguez alleged conduct made him guilty of committing the same crime for which Michael had been convicted and should have been treated no differently.

was acting in an undercover capacity and would presumably have been immune from criminal prosecution. We have, however, found no case which would support such a presumption and Michael has cited none to us. While it may be true that police involvement in otherwise illegal acts is often permitted for the purpose of investigating possible violations, *see Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.*, 7 Cal.4th 561, 28 Cal.Rptr.2d 638, 869 P.2d 1163, 1167 (1994), there is simply no blanket immunity doctrine that covers all types of illegal activity performed by officers in the context of an investigation or an undercover "sting" activity. *Cf. People v. Backus*, 23 Cal.3d 360, 152 Cal.Rptr. 710, 590 P.2d 837, 849 (1979) (noting that "the immunity granted by section 11367 [of the Cal. Health & Saf.Code] is not a license to peace officers to commit any and all otherwise unlawful acts in the pursuit of narcotics law enforcement objectives"). Limits have been recognized where criminal prosecution may be appropriate. *Id.* at 850 (holding that where narcotics officers failed to comply with the statutory provisions governing disposition of heroin seized and purchased by the officers, they acted outside the scope of their duties and would not be afforded immunity from prosecution); *see also Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (noting that if police "engage in illegal activity" with a defendant "beyond the scope of their duties," the remedy lies in prosecuting them under the applicable provisions of state or federal law).

In the present case, it is doubtful that the police conduct alleged—the exposure of a police officer's genitals and an act of masturbation in a public place-is an accepted practice of the Beverly Hills Police Department in the conduct of undercover operations. Certainly, it is not an issue that can be disposed of on a motion to dismiss. Thus, it can easily be distinguished from the common practice of using undercover vice officers as "decoys for soliciting acts of prostitution," *Provigo Corp.*, 28 Cal.Rptr.2d 638, 869 P.2d at 1167, and is more comparable to an undercover decoy officer actually engaging in the solicited sexual acts with the suspect prior to making the arrest. In such a case, as well as in the case before us, immunity from prosecution cannot be presumed; therefore, dismissal cannot be sustained on this basis.

Likewise, a reasonable fact finder could conclude that Michael's statements accuse Rodriguez of conduct that would disqualify him from service as a police officer, regardless of whether it was done to further an undercover operation. Because of the public nature of the location at which the alleged undercover operation took place, it is likely that the alleged conduct would be perceived not only as an exercise in bad judgment and misconduct on the job but also as a possible threat to children and other residents who use the park restroom.

## B. Constitutional Privilege

The district court held that Michael's statements were non-defamatory expressions of opinion that were protected by the First Amendment and not actionable assertions of fact that can give rise to a slander claim.

Before the Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), it was accepted dogma that all statements of "opinion" were categorically protected by the First Amendment and were therefore not actionable. *See Kahn v. Bower*, 232 Cal.App.3d 1599, 284 Cal.Rptr. 244, 248 (1991) (citing *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 131 Cal.Rptr. 641, 552 P.2d 425, 428 (1976)).

Relying on this doctrine, the California Supreme Court in *Gregory* established the rule that in cases where potentially defamatory statements are made in the context of "a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." 131 Cal.Rptr. 641, 552 P.2d at 428; *see also O'Connor v. McGraw–Hill, Inc.,* 159 Cal.App.3d 478, 206 Cal.Rptr. 33, 35 (1984) (citing *Okun v. Superior Court,* 29 Cal.3d 442, 175 Cal.Rptr. 157, 629 P.2d 1369, 1376 (1981); *Lewis v. Ueberroth,* 147 Cal.App.3d 442, 195 Cal.Rptr. 150, 152 (1983)) (applying the rule from *Gregory* ). Along these same lines, the court in *Gomes v. Fried,* 136 Cal.App.3d 924, 186 Cal.Rptr. 605, 611 (1982), held that statements made about a police officer's failure to assist with a citizen's arrest of his fellow officer for a parking violation by a citizen being cited for the same violation were statements of opinion, and were "therefore not actionable."

■■■ The Court in *Milkovich,* however, rejected the categorical "opinion rule" that had been adopted by the lower courts as a "mistaken reliance on the *Gertz* [v. *Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ] dictum." *See Kahn,* 284 Cal.Rptr. at 248 (quoting *Milkovich,* 497 U.S. at 19, 110 S.Ct. 2695). The Court stated that it had never "intended to create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *James v. San Jose Mercury News,*

*Inc.,* 17 Cal.App.4th 1, 20 Cal.Rptr.2d 890, 897 (1993) (quoting *Milkovich,* 497 U.S. at 18, 110 S.Ct. 2695). In doing so, the Court "made clear that a false assertion of fact could be libelous even though couched in terms of opinion." *Moyer v. Amador Valley Joint Union High Sch. Dist.,* 225 Cal. App.3d 720, 275 Cal.Rptr. 494, 496 (1990). "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich,* 497 U.S. at 19–20, 110 S.Ct. 2695.

■■ ■■ The Court also determined that before there could be liability under state defamation law, "a statement on matters of public concern must be provable as false ... at least in situations ... where a media defendant is involved." *Id.* at 19–20, 110 S.Ct. 2695.[7] Thus, the dispositive issue in this case is whether a reasonable fact finder reading or listening to the statements made by Michael could conclude that they "imply a provably false factual assertion." *See Kahn,* 284 Cal. Rptr. at 249 & n. 3 (applying the *Milkovich* standard regardless of whether the defendant is a member of the media); *see also Morningstar, Inc. v. Superior Court,* 23 Cal.App.4th 676, 29 Cal.Rptr.2d 547, 552 (1994); *Moyer,* 275 Cal.Rptr. at 497.

■■■ The issue of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court to decide. *Campanelli v. Regents of the Univ.,* 44 Cal.App.4th 572, 51 Cal.Rptr.2d 891, 894 (1996). "If the court concludes the statement could reasonably be con-

---

7. Michael's statements address matters of public concern because his statements allege an act of misconduct by a police officer and because Michael's status as a celebrity had drawn significant public attention and interest to the details of his arrest. *Cf. Seelig v.*

*Infinity Broad. Corp.,* 97 Cal.App.4th 798, 119 Cal.Rptr.2d 108, 116–17 (2002) (applying the provably false requirement to statements calling a participant on a popular reality game show a "chicken butt" and "skank").

strued as either fact or opinion, the issue should be resolved by a jury." *Id.* at 895 (citation omitted).

■ To determine whether an alleged defamatory statement implies a factual assertion, we examine the "totality of the circumstances" in which the statement was made. *See Underwager v. Channel 9 Australia,* 69 F.3d 361, 366 (9th Cir.1995). We look at the statement both "in its broad context," considering "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work," and in its "specific context," noting the "content of the statements," the "extent of figurative or hyperbolic language used," and "the reasonable expectations of the audience in that particular situation." *Id.* In applying this test, the "court must place itself in the position of the ... reader, and determine the sense of meaning of the statement according to its natural and popular construction" and the "natural and probable effect [it would have] upon the mind of the average reader." *Winter v. DC Comics,* 121 Cal.Rptr.2d 431, 437 (2002) (internal quotations omitted).

### 1. *Entrapment Claim*

■ Michael's comments to the media, which imply the belief that he had been entrapped by Rodriguez, constitute his interpretation of the law. "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute ... are opinion statements, and not statements of fact." *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 731–32 (9th Cir.1999) (applying California law). Thus, as a layperson, Michael's allegations of entrapment cannot constitute defamation under California law.

### 2. *Statements of Fact*

■ In addition to the entrapment claims, Rodriguez contends that Michael's statements included specific factual assertions that Rodriguez had performed lewd acts in a public place. Michael argues that these "facts" were subsumed within his allegation of entrapment and therefore cannot be extricated from this opinion to form the basis of a viable slander claim. The district court relied primarily upon the pre-*Milkovich* cases of *Gregory, O'Connor,* and *Gomes* in concluding that Michael's statements were non-defamatory statements of opinion because "[t]he average listener would likely conclude that [Michael's] comments to the media merely amount to [his] version of the circumstances surrounding the arrest and what led him to act lewdly." Like Michael, the district court concluded that Michael's reference to the alleged lewd acts by Rodriguez "are not separable from [Michael's] reference to entrapment."

■ Since *Milkovich,* however, statements including provably false factual assertions which are made or implied in the context of an opinion are not absolutely protected from defamation liability under the First Amendment. *See Milkovich,* 497 U.S. at 19, 110 S.Ct. 2695. In response to *Milkovich,* California courts have begun to distinguish between non-actionable opinion and "provably false factual assertions," *see Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal.App.4th 1359, 88 Cal.Rptr.2d 802, 821 (1999); *Edwards v. Hall,* 234 Cal.App.3d 886, 285 Cal.Rptr. 810, 819 (1991), and to recognize that "[i]f a statement of opinion implies knowledge of facts which may lead to a defamatory conclusion, the implied facts must themselves be true." *See Eisenberg,* 88 Cal. Rptr.2d at 821. The California courts have also rejected the argument that a categorical exemption for opinions, or

broader protection for freedom of speech and defamation defendants than that granted by the United States Constitution, as set forth in *Milkovich,* exists independently under California law. *See Edwards,* 234 Cal.App.3d 886, 285 Cal.Rptr. 810, 820–23 (noting that *Baker v. Los Angeles Herald Examiner,* 42 Cal.3d 254, 228 Cal.Rptr. 206, 721 P.2d 87 (1986), rested solely on the First Amendment and did not therefore provide a broader protection to freedom of speech and statements of opinion under the California Constitution); *Kahn,* 284 Cal.Rptr. at 248 & n. 2; *Weller v. Am. Broad. Cos.,* 232 Cal.App.3d 991, 283 Cal.Rptr. 644, 653–54 (1991) (noting that the California Supreme Court in *Brown v. Kelly Broad. Co.,* 48 Cal.3d 711, 257 Cal.Rptr. 708, 771 P.2d 406 (1989), "clearly signaled its reluctance to provide greater protection to defamation defendants under the state Constitution").

The premise established in *Gregory,* 131 Cal.Rptr. 641, 552 P.2d at 428, and *Gomes,* 186 Cal.Rptr. at 611, that language which generally might be considered as statements of fact made by participants in heated adversarial settings, such as a labor dispute, can assume the character of statements of opinion can no longer be interpreted to mean that *all* statements made in such settings are automatically exempt from defamation liability. Rather, because these decisions were based on the categorical "opinion rule" that was rejected in *Milkovich,*[8] close consideration must be given to the language, tenor, and context of the statements made in the dispute or debate setting to determine whether the statements are actionable or are such that "no 'reasonable fact finder could conclude that [they] imply a provably false factual

assertion.' " *See Moyer,* 275 Cal.Rptr. at 497; *see also Weller,* 283 Cal.Rptr. at 650 (quoting *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695) (recognizing First Amendment protection for statements when the "language and tenor" is such that they cannot " 'reasonably [be] interpreted as stating actual facts' ").

Michael made the statements in the context of a number of television and magazine interviews in which he sought to defend and vindicate himself in the public eye against the notoriety of his widely-publicized arrest. While this, to some extent, contextualized the arrest as a dispute between the arresting officer and the arrestee, Michael's statements went well beyond generalized accusations, subjective comments, or other "classic rhetorical hyperbole." *See Seelig,* 119 Cal.Rptr.2d at 117; *Ferlauto v. Hamsher,* 74 Cal.App.4th 1394, 88 Cal.Rptr.2d 843, 851 (1999). Instead, Michael's statements asserted the precise factual nature of his accusation, *Hall,* 285 Cal.Rptr. at 820, and charged Rodriguez with the specific and objectively verifiable acts of genital exposure and masturbation. These are provably false factual assertions of what Rodriguez was accused of having committed.

Similarly, the colorful and humorous language Michael used to speak about the incident did not "negate the impression that [Michael] was seriously maintaining[that Rodriguez] committed [the lewd act]." *See Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695. Nor did the general tenor of his statements negate the impression. Thus, the propriety of the district court's dismissal depends on whether Michael's statements are "provably false."

---

**8.** In *Kahn,* the court recognized *Gregory* as one of the "seminal cases" setting forth the "categorical exemption of opinions from the reach of defamation law," noting that *Gregory* cited to *Gertz,* 418 U.S. at 339–340, 94 S.Ct. 2997, and stated that courts " 'apply the Con-

stitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse.' " *See Kahn,* 284 Cal.Rptr. at 248 (quoting *Gregory,* 131 Cal.Rptr. 641, 552 P.2d at 428).

We thus hold that the assertions that Rodriguez first exposed himself and masturbated in front of Michael are factual and susceptible of being proved true or false. *See Weller,* 283 Cal.Rptr. at 650; *see also Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695. They therefore give rise to an action for slander. *See Weller,* 283 Cal. Rptr. at 653. Accordingly, we conclude that Michael's interview statements regarding Rodriguez's conduct are provably false assertions of fact and are not shielded as opinion.

### 3. The California "Litigation Privilege"

 Michael further contends that his claim of entrapment and related statements were absolutely privileged as speech made in furtherance of a judicial proceeding because he made them during his two-year probationary period. In California, a communication made in a "judicial proceeding" is "privileged." Cal. Civ.Code § 47(b). "The usual formulation is that the privilege applies to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, 369 (1990).

The California courts have applied the privilege quite expansively. *Id.* at 368. The privilege has been applied to communications, whether or not they are "publications," to all torts except malicious prosecution, to "any publication 16 required or permitted by law in the course of a judicial proceeding to achieve the objects of litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved," and to communications not made for the purpose of promoting the "interest of justice." *Id.* at 368–69 (internal citations omitted). The

privilege has also been applied to pre-litigation communications. *See Nguyen v. Proton Tech. Corp.,* 69 Cal.App.4th 140, 81 Cal.Rptr.2d 392, 396 (1999).

 Despite this broad application of the privilege, however, the district court properly held that the privilege does not apply to Michael's interview statements regarding his arrest. As the California Supreme Court noted in *Silberg,* "[t]he principal purpose of [the litigation privilege] is to afford litigants and witnesses ... the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." 266 Cal.Rptr. 638, 786 P.2d at 369 (internal quotation marks omitted).

In *Rothman v. Jackson,* 49 Cal.App.4th 1134, 57 Cal.Rptr.2d 284, 294 (1996), the court held that the litigation privilege did not extend to "litigating in the press." Like the case at bench, *Rothman* involved statements that had been made to the press on behalf of a celebrity in order to vindicate him from criminal charges "in the forum of public opinion" by denying guilt and making countercharges that those bringing the charges were guilty of criminal conduct. *Id.* Concluding that "similarity, or even identity, of subject matter" or content is not alone sufficient to trigger the litigation privilege, the court determined that in order to meet the "logical relation" requirement, a communication must have a *functional* connection to litigation, meaning that the communicative act "must function as a necessary or useful step in the litigation process and must serve its purposes." *Id.* at 292. The court then held that the statements to the media were not privileged because they did not have the requisite "logical relation" to the litigation, noting that "either party's understandable desire for vindication ... is not an 'object of litigation,' which satisfie[d] the 'furtherance' requirement." *Id.* at 292–94.

Because Michael's statements were not made until after the judicial proceedings had concluded and were not made in anticipation of future litigation, the absence of a *functional* connection between Michael's interview statements and any litigation is even more apparent in the present case. Extending the privilege to statements made after proceedings have been completed, and without a purpose in the litigation process, would not be consistent with the objectives of the litigation privilege. As the court explained in *Silberg*, "in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing *during trial* the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." 266 Cal.Rptr. 638, 786 P.2d at 369 (citations omitted) (emphasis added). Because Michael did not "assume responsibility for the complete litigation of [his] cause during the proceedings," [9] *see Silberg*, 266 Cal. Rptr. 638, 786 P.2d at 370, and because the litigation privilege does not extend to "litigating in the press," *Rothman*, 57 Cal. Rptr.2d at 294, we agree with the district court that the litigation privilege does not apply to the statements at issue in this case.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Rodriguez's slander claim (except that portion of the claim based on the lyrics and video of *Outside* ), is reversed and the case is remanded for further proceedings.

**REVERSED and REMANDED.**

REINHARDT, Circuit Judge, dissenting:

George Michael responded to press inquiries regarding what he thought to be unfair police practices. In the course of several colorful interviews, he described the circumstances of his arrest by a Beverly Hills Police officer, alleging that he had fallen prey to police entrapment. Michael—a successful celebrity with deep pockets—now finds himself subject to a lawsuit alleging defamation. By allowing the suit to proceed, the majority gives law enforcement officers a tool to silence speech on a topic of critical public importance—police misconduct. Under California law, Michael's speech criticizing the manner of his arrest at the hands of the police deserves more protection. Accordingly, I respectfully dissent.

I

Police officers serve in unique positions of public trust. They are charged with protecting individual security and safeguarding individual rights, and are therefore legally authorized to use a level of coercive force not afforded to the lay population. Most officers exercise this privilege responsibly and with great care. Some, occasionally, do not. *See, e.g., United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir.2002) (describing the Los Angeles "Rampart" scandal).

Yet even when officers exceed the permissible level of force, crossing the line from public defense to public offense, they are often exempted from liability, so as to preserve their incentive to act on behalf of the common good. As the Supreme Court has repeatedly recognized, because even

---

**9.** Michael chose to plead nolo contendere to the misdemeanor disorderly conduct charges; therefore, he did not pursue an entrapment defense based on the conduct he now alleges that Rodriguez engaged in.

"the mere 'specter of liability' may inhibit public officials in the discharge of their duties [if they are] forced to incur 'the expenses of litigation' and to endure the 'diversion of [their] official energy from pressing public issues,'" *Atwater v. City of Lago Vista,* 532 U.S. 318, 351 n. 22, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)), police officers may assert qualified immunity to dismiss claims, even some with constitutional merit, as early in the course of litigation as possible. Apparently, we fear that police officers will be unduly chilled in the lawful exercise of their duties if they are legally held to account for almost anything but plain incompetence or intentional violations of law, *see, e.g., Clement v. Gomez,* 298 F.3d 898, 903 (9th Cir. 2002). Therefore, we have erected a jurisprudential shield protecting police officers from damages for unconstitutional acts that a reasonable officer would not have known to be unconstitutional.

## II

By finding Michael's allegations to be actionable acts of slander the majority has extended the mantle of protection too far. Granting police officers immunity from actions for damages is one thing; granting them immunity from public criticism is quite another.

Preliminarily, I note that permitting suits such as Rodriguez's to proceed is contrary to the policy underlying *Harlow* itself. One of the reasons that police officers receive qualified immunity is so that society may avoid "the diversion of official energy from pressing public issues." *Harlow,* 457 U.S. at 814, 102 S.Ct. 2727. That policy is as applicable to suits in which the officers are plaintiffs as in those in which they are defendants. Thus, the *Harlow*

rationale militates against permitting Rodriguez's suit to proceed.

More important, the majority's rule effectively allows officers to chill the speech of those who would expose the abuse of public authority. California law does not permit as much.

The majority appears to believe that an actionable slander claim arises from every allegation of facts for which an officer would not be absolutely "immun[e] from prosecution." Maj. Op. at 984. This standard encompasses the vast majority of statements alleging police misconduct. *See, e.g.,* CAL. PENAL CODE §§ 68–70 (bribery and graft), 134–135, 141 (evidence tampering), 146 (illegal arrest or seizure), 146d (beneficial treatment), 149 (excessive force), 153 (obstruction of justice); *see also Pena v. Municipal Ct.,* 96 Cal.App.3d 77, 83, 157 Cal.Rptr. 584 (1979) ("Many, if not most, allegations of police misconduct are also violations of various criminal statutes."). Because most such allegations entail facts suggesting potentially unlawful behavior or impugning an officer's qualifications to serve—at least to the same extent as do Michael's protestations that he succumbed to the officer's display of his impressive physical attributes—the majority would presumably find them actionable under California's slander laws.

The majority's standard would thereby convert almost every public statement regarding alleged police impropriety into a potential lawsuit by the officer accused of wrongdoing. If a citizen claimed that an officer was unnecessarily rough in effecting an arrest, or that an officer was verbally abusive without provocation, such statements would apparently subject the citizen to the threat of liability—and at the least to the expense of defending a legal action.[1] This cannot be the proper result; the chill on reports of police misconduct would sim-

---

1. Indeed, in the usual case, these allegations would force the citizen to anticipate the costs

of a jury trial. The instant matter provides an

ply be too high. Rather than speak out about mistreatment at the hands of the police, and thereby risk the substantial cost of a legal defense, or, more important, an adverse verdict from citizens who have an abiding faith in the integrity and truthfulness of our law enforcement officers, many legitimately aggrieved individuals will simply remain silent.

California courts have flatly declared that this chill is unacceptable. In California, it is clear that criticism of police officer conduct on the job lies at the very heart of protected speech. Federal and state courts, construing both California and federal law, have emphasized its importance; the District Court for the Central District of California, for example, concisely summed up our repeated recognition that "[d]ebate on public issues and criticism of peace officers ... is speech 'at the very center of the constitutionally protected area of free discussion.'" *Hamilton v. City of San Bernardino*, 107 F.Supp.2d 1239, 1246 (C.D.Cal.2000) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)).

More important, California courts have repeatedly declared that such criticism is *not actionable*, especially if the criticism comes from a citizen who has been arrested. For example, in *Gomes v. Fried*, 136 Cal.App.3d 924, 186 Cal.Rptr. 605 (1982), the California Court of Appeals declared:

A difference of perspective between an arresting officer and a citizen who has

been arrested is normal. Charges that an officer was abusive or used unnecessary force or did not treat the arrested citizen with sufficient respect, or outraged or hyperbolic comments by the citizen *are to be routinely expected by the arresting officer.* (*Cf. Moriarty v. Lippe, supra,* 162 Conn. 371, 294 A.2d 326, 333 (statement that 'this ape almost twisted my arm off,' held not actionable); ... *Orr v. Lynch,* 60 App.Div.2d 949 [401 N.Y.S.2d 897, 899](1978) (statement that officer 'opened fire' and 'gunned down' suspect, was 'rhetorical hyperbole' in context of broadcast and within privilege).)

*Id.* at 935, 186 Cal.Rptr. 605 (emphasis added). The *Gomes* court then found that the statements at issue in the case—detailed factual statements by an arrested citizen alleging illegal obstruction of justice by a police officer—were, under California law, "not actionable." *Id.; see also id.* at 933, 186 Cal.Rptr. 605 ("The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws.") (quoting and "find[ing] persuasive" *Coursey v. Greater Niles Township Publ'g Corp.*, 40 Ill.2d 257, 239 N.E.2d 837, 841 (1968)).

The reason for California's limitation on its slander cause of action is eminently sensible:

example. As with many encounters between police officers and private citizens, Michael and Rodriguez are the only eyewitnesses to the alleged misconduct. Constitutionally, because the allegations involve a public official, Rodriguez must prove at least a genuine issue of material fact regarding both falsity and malice, see *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir.1995); however, with no other witnesses to the event, Rodriguez will have no

trouble surviving summary judgment. As to falsity, the factual allegations will be subject to dueling affidavits representing conflicting and self-serving accounts of the arrest scenario. And as to malice, if the police officer can plausibly claim that Michael's allegations are false, because Michael was present for the disputed encounter, the officer will necessarily be able to claim that Michael *knew* the allegations to be false. Under the majority's standard, if the parties choose not to settle, the case will almost certainly proceed to trial.

We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands.

*Imig v. Ferrar,* 70 Cal.App.3d 48, 56, 138 Cal.Rptr. 540 (1977). A later court emphasized that "[t]hese policy reasons are applicable even if they sometimes have the incidental effect of providing immunity to the 'malignant slanderer.'" *Pena v. Municipal Ct.,* 96 Cal.App.3d 77, 82, 157 Cal. Rptr. 584 (1979).[2] *See also Haddad v. Wall,* 107 F.Supp.2d 1230, 1237 (C.D.Cal. 2000) (noting the argument that a police officer's frequent and often antagonistic contact with the public would lead to the conclusion that "peace officers would be less entitled to protection from defamatory statements" than other public officials), *vacated on other grounds by* 2002 WL 31320295 (9th Cir. Oct.16, 2002) (unpublished disposition).

The majority claims that the cases above—at least those decided before 1990—have been undermined by the Supreme Court's decision in *Milkovich,* which held that statements of opinion are not always constitutionally protected. However, although the decisions above certainly consider constitutional limitations, they do not rest exclusively on constitutional grounds; instead, they also expressly restrict the reach of the state slander cause of action as a matter of state policy. Even when the statements at issue involved detailed factual allegations, as in *Gomes,* the California courts have held that a slander action would not lie against such claims of officer misconduct. In exchange for the policeman's legal right to deploy coercive force, California has determined that an officer must suffer the occasional public complaint arising from his exercise of authority, without the recourse of a slander claim. Even if this limitation is no longer required by the federal constitution, we may not automatically expand the application of a California slander statute as construed by the California courts. In formulating its civil cause of action for slander, California has made the choice to provide more latitude to citizen complaints about police misconduct than the federal constitution requires. We should respect that choice.

## III

Even if California law, in general, permitted police officers to maintain a slander cause of action for allegations of police misconduct, Rodriguez would not be entitled to recover on the facts alleged. To be clear, after the majority correctly disposed of Michael's statements asserting legal conclusions, *see* Maj. Op. at 986, only seven specific allegations remain.[3] These all in-

2. This policy choice, deeming citizen complaints more important than causes of action allowing police officers to chill claims of misconduct, are no less relevant or prized today. Federal and California courts have both recently cited these policies in striking down causes of action purporting to allow police officers to sue citizen complainants for defamation. *See, e.g., Walker v. Kiousis,* 93 Cal. App.4th 1432, 114 Cal.Rptr.2d 69 (2001); *Haddad v. Wall,* 107 F.Supp.2d 1230 (C.D.Cal.2000), *vacated on other grounds by* 2002 WL 31320295 (9th Cir. Oct.16, 2002) (unpublished disposition).

3. Rodriguez alleges that Michael made the following statements:
 December 1998 issue of *Q:*
 (i) I didn't go anywhere near the guy. He started playing, I'll show you mine, you show me yours. And when you [sic] me yours, I'll nick (arrest) you. That's what happened. I was angry ... I responded to something that I shouldn't have, but I don't think anyone in a thousand years looks at a man waiving [sic] his penis at them and thinks, oh, he's got to be a cop. ... If men pick each other up, they show each other their dicks! That's how it works. They

volve statements that Michael made in various celebrity interviews (including the David Letterman show), a format in which it is commonly expected that both guest and host will exaggerate. *See* Maj. Op. at 987 (recognizing the importance of construing allegedly slanderous statements in full context).

The majority asserts that Michael's statements support a claim under two of the California statute's enumerated slander categories: charging Rodriguez with a crime, and "imputing to him [a] general disqualification" to serve as a police officer. I respectfully disagree on both counts.

First, my colleagues apparently believe that the listed statements allege facts potentially subjecting Rodriguez to criminal liability. However, the only potential crime that they have identified is disorderly conduct, pursuant to a statute prohibiting "lewd and dissolute" acts.[4] *See* Maj.

Op. at 983; CAL. PENAL CODE § 647(a). Despite the majority's assertion to the contrary, Maj. Op. at 984, Michael's allegations do not in fact satisfy the elements of a disorderly conduct charge. In *People v. Swearington,* 71 Cal.App.3d 935, 140 Cal.Rptr. 5 (1977), the California courts recognized that:

> Sexual motivation is a prime requisite for conduct to constitute lewd conduct. It is a defense to a charge of lewd conduct that a defendant's conduct did not exhibit the requisite 'sexual motivation' to bring it within the ambit of lewd or dissolute conduct as proscribed by Penal Code section 647, subdivision (a).

*Id.* at 944, 140 Cal.Rptr. 5. It is not possible to say that any of Michael's statements even hint that Rodriguez might have had a "sexual motivation" or that anyone would believe that he might have been so motivated-indeed, Michael explicit-

usually don't get nicked. Why should I think he's a cop? ... If you see a man playing with his penis in front of you, you don't think it's a cop. I don't understand why it is more legal for a cop to go into a toilet and wave his dick at people than it is for someone who wants to do it.
December 1998 issue of British *GQ:*
(ii) People say to me 'C'mon, you must have known it was a cop.' But, how would I know that? There's a man standing there, six feet two, great-looking, and waiving [sic] his dick about and staring at me. At a time like that, you don't think, 'There's Karl Malden.' You can't spot a copper, especially when he's wearing a pair of shorts and coming on to you in a Beverly Hills toilet. It's the last thing you expect. I didn't think taxpayers paid people to go around as professional wankers (masturbators). I was absolutely stunned when he turned out to be a copper. But he is standing there and his game is, I'll show you mine, you show me yours, and then I'll f—king nick you.
December 4, 1998, to the BBC:
(iii) Ultimately, you don't see it as a massive risk if there is no one else around, and if there is someone waiving[sic] his genitals around in front of you, you don't think

they're an office [sic] of the law. I fell for the trick. It was done very well.
December 1998, to the *Globe Daily:*
(iv) A hunky guy walked in (the Plaintiff), started masturbating and then left.
November 1998, on a David Letterman broadcast:
(v) He played a game called you show me yours, no, I'll show you mine; it was called I show you mine, you show me yours and I'll take you down to the police station.
November 1998, on British television—the Parkinson Show:
(vi) I responded to a very handsome, tall, good-looking American cop, they don't send Colombo [sic] in there to do this and so I responded to that and I can't be ashamed of the fact that it was there in front of me and I thought, oh well.
(vii) I've said this before, but it's true. If there is someone standing there waiving [sic] their genitals at you, you don't think they're an officer of the law.

4. Michael clearly alleges that Rodriguez entrapped him, but entrapment is a defense to criminal prosecution rather than a violation of the California penal code. Rodriguez could not be prosecuted for "entrapment."

ly stated that Rodriguez's motivation was, to Michael's chagrin, entirely focused on law enforcement.[5] Given Michael's seven statements, no reasonable jury could find Rodriguez guilty of a crime.[6] As a matter of law, therefore, this cannot be the basis for finding actionable slander.

For the same reasons, none of Michael's allegations "impute to [Rodriguez] a general disqualification" from service as a police officer. Rodriguez was given the responsibility to investigate complaints of lewd acts in the men's restroom and apprehend any wrongdoers; Michael's allegations, at most, suggest that Rodriguez did his job with a bit too much enthusiasm. Rodriguez did not injure his suspect, or frame him, or tamper with evidence. *See, e.g., United States v. City of Los Angeles,* 288 F.3d 391 (9th Cir.2002); *Ovando v. City of Los Angeles,* 92 F.Supp.2d 1011 (C.D.Cal.2000). Nothing in Michael's statements even approaches an inference that Rodriguez is generally unfit for service, and no board of review would be likely to consider Rodriguez unqualified to serve as a police officer as a result of his alleged conduct.

More generally, these are not the types of allegations that give rise to a claim of slander per se under the California statute. Police officers have been protected from suit by a zone of qualified immunity for acts that reasonable officers would not have known to be illegal. Because "the expenses of litigation" are no less onerous for private citizens, citizen complainants exercising their First Amendment rights should be similarly free from the "specter of liability" for acts of public criticism. Michael's statements do not charge Rodriguez with misconduct that if true would render Rodriguez a criminal or unqualified to serve as a police officer; California has declared the sort of public criticism at issue in this case too important to risk the chill of a lawsuit. Because the district court properly dismissed these claims, I respectfully dissent.

---

**5.** The majority is absolutely correct that "no blanket immunity ... covers all types of illegal activity performed by officers in the context of an investigation or an undercover 'sting' activity," Maj. Op. at 984. Conduct within the scope of a vice officer's duties, however, is recognized as protected. *See Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.,* 7 Cal.4th 561, 568–69, 28 Cal. Rptr.2d 638, 869 P.2d 1163 (1994). Michael has alleged nothing so far out of the scope of a reasonable vice officer's duties in the course of an investigation into lewd behavior in men's bathrooms to suggest that Rodriguez would be subject to prosecution. In the context of a sting operation to arrest perpetrators of lewd acts, no reasonable jury could find an officer guilty of "disorderly conduct" for displaying his penis in a men's restroom to test for an illegal response—with nobody around but the target of the sting.

**6.** The only alleged statement that even comes close is Michael's fourth statement: "A hunky guy walked in, ... started masturbating and then left." I note first that although the majority repeatedly claims that Michael alleged acts of masturbation, Michael in fact claimed only that Rodriguez *started* masturbating but then left, a different matter entirely. Fortunately, we need not parse the difference more closely, as Rodriguez's blameless motivation for any allegedly lewd act clearly precludes criminal liability.